17-3810 Unitrin Direct Insurance v. Michael Esposito Mr. Gallagher? Yes, sir. I promised that, right? Gallagher, Your Honor. Gallagher, I'm sorry. Good morning. Good morning. If I could summarize our case in about three bullet points. Are you reserving any time for rebuttal? Oh, I'm sorry. Yes, I'd like to reserve a minute. Very well. If I could summarize our position in three bullet points. Number one, Pennsylvania is a strict four-corner state. Are there any exceptions to the four corners? Well, there are, according to discourse decision air products. There's an exception to that rule where an exception to a coverage exclusion is at issue in the case. In that situation in air products, the court held that an insured can offer extrinsic evidence to address the exception to the exclusion. Our position on that is, number one, we don't consider it necessary to reverse air products, although I can tell you that in the 24 or 25 years since it was decided, I'm not aware of a single Pennsylvania case that has adopted that. I think it's a questionable validity that cases that were cited in support of that proposition didn't hold that, as I read them. But putting that aside, we don't think that the self-defense exception to the intentional injury exclusion is at issue for a couple of reasons. One of them is, under the four corners rule, the complaint allegations that normally control the duty to defend clearly foreclosed any issue of self-defense because it was alleged that the assault was unprovoked and unjustified wasn't necessary for the plaintiff to allege. Bracket this for a second. Let's assume, I know you have arguments that this policy doesn't in fact cover self-defense, but let's assume we have unequivocal coverage of self-defense, not in an exception exclusion, but in the body of what counts as an occurrence. If that's the case, your position on four corners would render that coverage nugatory because any plaintiff is never going to plead that my attack was unjustified, therefore defendant's response was justified or warranted, right? You can always plead in such a way as to deprive your adversary of the insurance company's defense. So I don't know that if there's ever a situation for an air products exception, this would seem to be it. Our position is it's not a valid exception. In this case, it wouldn't apply because the allegations do foreclose a self-defense issue because they do say it was unprovoked and unjustified. Now, using your example, if you include that in the insuring agreement, we would have a different story. Here, the policy covers bodily injuries caused by an occurrence, meaning an accident. We argued and the district court held that there was no occurrence. If you would agree that we could look to extrinsic evidence in that situation, why wouldn't that apply here if what we're looking to is whether there's ambiguity given the exception to exclusion in what constitutes an occurrence? My understanding of the district court's holding is it held that there was no occurrence. The court did address the ambiguity issue. Nonetheless, held there was no occurrence. It wasn't argued by Mr. Esposito that there was an occurrence. But we can affirm on any ground fairly presented in the record. And I look at the cases. The states are split. Pennsylvania said nothing. But a slight majority of states out there find that self-defense actually counts as an accident, either on a theory that it was an instinctive reaction or that the whole situation was unplanned, right? If we were to follow those cases, then it would be an accident, and then it would be an occurrence, and then it would be triggered. Now, we wouldn't be affirming on the same ground given by the court below. But we can reach that. Why shouldn't we rule that way? Well, such a ruling would be contrary to Pennsylvania law as I know it in any event. We have a superior court's decision in Donoville v. Ferrara where a woman picked a police officer and claimed she was arguing self-defense. And the court held in favor of the insurer in that case. We have Judge Slomsky's decision in the Malfoy case. And we have the decision of Judge Saffone from the Western District of Pennsylvania. All of them, in our view, either Judge Savage was right or all of them are wrong. Okay, these aren't binding on us. Tell us why they should persuade us. What's the reason it should persuade us in these cases? I think fundamentally I understand your argument, but I believe that whether someone's acting in self-defense or not, when he is alleged to have engaged in an unprovoked, unjustified physical assault and beating of the plaintiff and kicking the plaintiff and all the things that are in the complaint, that's not an accident. I don't see how that can be considered an accident. I understand that there can be an argument made there and that other courts may have so held. But in my view, our position is that it was not an accident. The district court was actually correct in holding that. What if we don't limit ourselves to the four corners and we say, okay, maybe it was provoked, maybe it wasn't? Would a provoked fight be an accident? I suppose I can see if you're viewing it from the perspective of the person who was provoked into committing the assault, it certainly wasn't something he would have expected as a rule. So it's not expected in that way. I can understand you viewing it that way. On the other hand, whenever you intentionally employ physical force against someone else, I find it very difficult conceptually to consider that, to view that as being an accident. What do you make of Air Products' reliance on cases that deal with the duty to indemnify instead of the duty to defend? That's how we address those cases and Air Products in our brief. There's a big difference. When you get to the duty to indemnify, extrinsic evidence is obviously admissible. You go by the actual facts, not the complaint allegations. So what the courts in the cases cited by Air Products did was they looked to extrinsic evidence in determining whether an insurer had a duty to indemnify its insurer. They weren't addressing the question of whether they had a duty to defend it, which is governed by the allegations of the complaint. So does that mean Air Products doesn't apply in any case involving duty to defend? Yes. I think you can run the argument the other way, though, because often the duty to defend is understood to be broader than the duty to indemnify. It's broader in the sense that if there is a potentially covered claim, whether it's actually covered or not, and whether the actual facts mean you have a duty to indemnify, you have a duty to defend. It's broader in the sense that you are stuck with the factual allegations of the complaint, whether they're true or not. Let's go back to the question that Judge Bevis was asking about the nature of the occurrence here and whether it could be considered an accident. In the Pfeiffer case, we had held that you look at the question of damages from the injury question from the perspective of the insured. Where there is an attack on the insured or, in this case, the insured, allegedly the insured's wife, that is what triggers the reaction of self-defense. Why isn't that an accident from the perspective of the insured, if that's the way we're supposed to approach the analysis? I think you have to look at the fundamental nature of the act, which is a physical assault. And I don't think that can be viewed as an accident, no matter what led up to the incident. But, again, we're looking at it from the perspective of the insured. To the insured, this is something that comes out of the blue. Whatever the intention of the attacker, we're told by our holding in Pfeiffer not to look at that.  From the insured's perspective, once he enters the fray and kicks and punches and physically beats another party, it's not accidental behavior. It's intentional volitional conduct, whether or not he walked into the bar expecting this to occur. But at that point, we're into the world of the exception to the exclusion, right? That's the insured then is maybe acting intentionally, but it's in self-defense. If we're looking at the question of the original occurrence, I understand your argument to be that there was no accident, no occurrence, and pointing to the district court's reasoning that there was not an occurrence. But as Judge Bevis noted, we can't affirm on any ground. If we conclude that it constitutes an accident when an insured is attacked out of the blue, then why isn't it right that if there is an accident here, it constitutes an occurrence? And because there's ambiguity about the scope of an occurrence and whether it can take into account that type of accident, we do need to look beyond four corners. And we do need to read the policy in a way that is not going to render superfluous the language of the exception to the exclusion. Okay. Was there a question? No, Your Honor, I'm sorry. I think I agree completely with what Judge Cross is asking, and maybe the way I was going to formulate it, since you don't seem to follow her thread, is contrapreferentum requires reading this in favor of the insured. She makes the point that there's an exception to exclusion that strongly implies that self-defense is covered, right? So why shouldn't we read this whole thing as casting light on what is an accident in the first place? If there's an ambiguity here, the policyholder wins. Pennsylvania courts have had several occasions to address the occurrence requirement of the insuring agreement and have not in any of the cases that I've seen held that the term is ambiguous. But I'm asking why shouldn't we be able to find an ambiguity here? Because you can see this is a standard form contract you drafted. Contrapreferentum means if there's an ambiguity, the insured wins. So why shouldn't we find an ambiguity here based on the exception to the exclusion that suggests self-defense coverage? Well, self-defense is not on the table because this particular complaint rules that out. It forecloses that. That's a four corners point. Let's set aside the four corners point. You don't get to self-defense because of that. It's not the proper analysis of an insurance contract. If there's no occurrence, which the district court held, that's the end of the story. In this case, where the complaint forecloses any claim of self-defense, why they pleaded it that way I can't tell you, but the complaint forecloses that so that the exception to the exclusion is essentially irrelevant. It's not on the table. Let's imagine a case in which the complaint does not foreclose it. What we're trying to get at is not this case and this complaint, but the construction of the contract. You have an insurance policy. You have a complaint that just alleges that there was the use of force. Why then should we not construe the policy as covering self-defense? Because the Pennsylvania courts have never viewed an occurrence from that perspective. I don't think it's consistent with the Pennsylvania judicial approach to what an occurrence is. I think that Judge Savage was actually correct in holding that there was no occurrence. What's your best authority for that? I'm sorry? You've made an assertion of a Pennsylvania law. What's your best authority that that is the position of the Pennsylvania courts? Well, the Caverner case from 2006 is certainly the latest Supreme Court of Pennsylvania case on point in which it essentially held that the term was unambiguous. It was a different kind of case. It wasn't an assault case. So I can't give you one of those. In that case, why isn't the district court correct that it would render other language in the policy superfluous? In that circumstance, what meaning could there be to an exception to the exclusion for self-defense? I understand Judge Savage's concerns and his reasonings here. The reason here, I think the issue is that self-defense should not have been on the table. That exception to the exclusion shouldn't have been part of the court's analysis. The only way it became part of it was by looking at the defendant's answer to the complaint for declaratory judgment and his testimonial affidavit, which, although procedurally appropriate for them to have submitted in response to our motion, substantively were irrelevant. What circumstance, if not here, would self-defense be covered under the policy? If we had an ambiguity in the complaint allegations, if it was not alleged that the assault was unprovoked and unjustified, just take those words out of it, and you have an ambiguity as to whether there was self-defense, the complaint doesn't address the issue as it did here, then perhaps it would be appropriate for that issue to be raised. The complaint could have pleaded, I was in a bar and an accident happened and things got out of hand and I was accidentally in a fight. I mean, you'd want to use that word accident a lot if you're pleading it, right? You want it covered. Sure. That would be a different story also. And then you'd be here saying, you'd be telling us, don't believe what's in the complaint. Or you'd say, well, it's fiction, but I'm stuck with the four corners. Why would a plaintiff in a tort case against your client ever plead it that way? How would that ever? Which way? That it was an accident or plead it the way this plaintiff did, that it was unprovoked and unjustified? How would they plead it any other way than I was attacked? Even, as I understand your argument, even if he didn't say it was unprovoked, even if it was that things escalated and then got from some altercation and then got out of hand, you would say that's not an accident, that's intentional conduct from the outset by both participants involved. But the very nature of an assault like this is going to involve intentional conduct that's pleaded by the plaintiff. I think the problem here is that the district court sort of got into metaphysical, philosophical issues that weren't relevant from the standpoint of what was alleged in this particular lawsuit. If you take parts of the policy, of any insurance policy, and put them together, you can generally find something in there that's going to create ambiguity. In this case, we have an unprovoked, unjustified physical assault and beating. That's what the complaint says. Those are the facts we have to deal with. In that situation, any issue of self-defense is foreclosed, which that's what Judge Slomski held in the Malfi case, and I realize it's not controlling, but that reasoning is consistent with how courts have approached this issue before. Now, if there are courts in other jurisdictions that have held that someone acting in self-defense in an assault case that involves an occurrence, involves an accident, I'm not familiar with the jurisdictions that have held that or their reasoning. I can only see it from the standpoint of I went to the bar that night, I didn't expect to get in a fight. In that sense, it's an accident. Once you get to the point of pulling hair, hitting, punching, kicking, you've crossed the line from accidental injury into potential injury, whether it was justified or provoked or not. You've reserved time for rebuttal. We'll hear you on rebuttal, Mr. Gallagher. I'm sorry? We'll hear you on rebuttal. Okay. Just one other point I'd like to make, just so we don't get sidetracked on this before I sit down. There's an exclusion in the policy for bodily injury arising from physical abuse. We raised that in our complaint. We raised it in our motion. The district court didn't address that exclusion. First time around, on reconsideration, we said you didn't address that exclusion. The court still didn't address that exclusion. There's no self-defense exception to that exclusion. Thank you. All right. We'll hear from Mr. Durham. Thank you. I see the case a little bit differently than my opponent. I see it simply as an interpretation of the contract. There is a case right here in the Third Circuit. It's called Aaliyah London Limited v. 65 Hogg Inc. doing business as the place, it's number 10, I'm sorry, 5-1046, in which Judge Prater held that an intentional shooting in a restaurant was an occurrence and covered under the accident clause of a policy. Now, this case was decided. What did the complaint say in that case? The complaint in that case said that the gentleman walked into the restaurant with the intended purpose of shooting the plaintiff in the underlying case. And he did shoot the plaintiff. Now, that case was decided on other grounds because there was an additional policy that said there's no coverage for assault and battery. All right. Well, let's focus on this case. Yes, sir. Do you agree that the trial judge was correct to hold that there was no occurrence? No, I don't believe it because under this- How was there an occurrence here under the complaint as pleaded? The complaint that's pleaded relies upon the ability of the underlying plaintiff's counsel. And however they decide to plead it, we have no control over whatsoever, just like I have no control over the answer which was filed by- So you're saying you would have pleaded the complaint differently? I don't say I would have- I think I would have had to- Well, that sounded like a strong implicit criticism of the way the complaint was pleaded. Not at all. How does this complaint as pleaded create an occurrence as defined in the policy? If you look at the Aaliyah Limited case- No, no, this- Yeah, I understand. I don't want to hear about another case right now. I'm asking you, this complaint, what in this complaint pleads an occurrence as defined under the policy? I guess the only way I can answer that, Your Honor, is- Paragraph 22 says what? Paragraph 9 says- Just cite me one paragraph, a sentence, a phrase in the complaint that pleads an occurrence. I can't do that, Your Honor. All right, so there's no occurrence. No, no, I don't agree that there's no occurrence because I think under Aaliyah there is an occurrence. If a shooting is an occurrence- We are not bound by Aaliyah, right? I understand that. You said that's Judge Prater's decision. Yes. So we're bound by Pennsylvania law, which has a fairly strong minority view of the Four Corners rule, right? I ask you to point to the complaint where an occurrence occurred. The striking, the allegation that he struck the underlying plaintiff gives rise to an occurrence under the idea of that being an accident because you can never accidentally defend yourself in self-defense. It becomes an illusionary- So it's not an accident. It's not an accident. I'm surprised to hear you concede that because a number of courts have found that that kind of self-defense is an accident. The Connecticut Supreme Court and Vermont Mutual found a dozen jurisdictions in which it is. I'm very surprised to hear you give that up. No, I said it is an accident under the case. I said you can never under the policy, if you look at the exclusions, and you have to get to the exclusions. I understand that. But if you look at the policy and the exclusions, how could you accidentally self-defend? You can't. Right. So it's not an accident. I'm surprised to hear you giving up. The first problem is you have to find an exception to Four Corners. And let's separate out the issues here. Part of his point is if there's a Four Corners rule that has no exception, you lose. Now, Air Products suggests there might be an exception, but the Pennsylvania courts don't find it. Let's assume there is an exception to the Four Corners rule. You still have an issue of construing the policy. The best argument for you is that there's this exception to an exclusion that looks like it creates an ambiguity. It's a standard form contract. They drafted it under contra preferentum. If there's an ambiguity, we find coverage for the insurance. Right. But the problem is, and your advocate put this in his brief and alluded to it briefly in his argument, that when you're dealing with an exception to the exclusion, it's not like it's in the head part of the policy. And his argument, there's some authority for this, is there's an order of battle in construing an insurance contract. First you look at what is covered. Then you get to the exceptions, the exclusions. And only after that you get to the exceptions. You don't use an exception to exclusion to create coverage. So part of his point is, even if we ignore Four Corners, even if we look, what is there here that you think could be understood to be coverage for self-defense? Why is it that we can use this exception to exclusion to cast light on what an accident or what an occurrence is in the first place to broaden it when it's kind of opaque here if you get to, where is it? It's in E1, the expected or intended injury provision, on A60 of the record. Why is it that that one cryptic sentence at the end of E1 doesn't even use the word self-defense. It says, use a reasonable force by an insured to protect persons of property. We should read that as trumping the usual order of battle of starting with the accident in the current language. Because I look at A58, page 17 of his brief concerning personal liability and cause for the insured. And I also look at A60, as you were just looking at, in which the exclusion says it doesn't apply if you're doing A, B, or C. What's your response to the we don't get to the exception? I believe that the allegation within the complaint of the striking is an accident as normally covered or understood. The occurrence that has to be defined by the policy as an accident becomes superfluous. How does one get to anything beyond that? You can never accidentally self-defend. So it does create an ambiguity in my eyes. The key issue is coverage for an accident. Right. And it seems perfectly consistent with the terms of the policy that there could be an accident. And that accident then triggers someone's response. You know, a tree falling where they, you know, push it out of the way or need to swerve and end up causing some damage or some injury. That is viewed as self-defense, but it's in response to an accident. Why isn't that the way to read what is a homeowner's insurance policy that provides coverage only for accidents? My best guess is that no one in this room, including myself, has ever sat down and read their own homeowners policy. Clearly, a individual like Mr. Esposito or any other homeowner does not even understand what the coverages are there. Because they're not there because the homeowner decided I need to have some protection. They're there because the bank decided they needed some protection on their mortgage. So in order to protect their investment in the property, they require the homeowner to buy the policy. So the homeowner doesn't even know what's in the policy. He certainly, therefore, is not acting with an intent. Oh, yeah, if I do A, I've got coverage. But if I do B, I don't have any coverage. We're looking for the understanding between the parties. This is, after all, a contract, and there was consideration in the premium that was paid by the insured to get a particular policy that the insured intended to cover something. Just on the face of it, how is it even plausible that someone purchasing a homeowner's insurance policy would expect that to cover a bar fight? They wouldn't expect it to cover a bar fight. If you went into the bar with the intention of getting into a fight. But if you were there simply for entertainment, to have a drink, to listen to some music, as is the underlying allegations in this complaint, and a fight breaks out, be it not even among the two participants in the underlying case, but in this particular case, it was between two females. The defense that was put forth was self-defense, not of the individual, but of his wife, that he got up to protect her from being assaulted by the underlying plaintiff, Mr. Anderson. Okay, but none of this is in the complaint, and it requires going well beyond the complaint. Yes, Your Honor, it does. Judge Krauss has a point, which is there are certain kinds of things that could be alleged in a complaint where maybe the homeowner was stumbling downstairs in response to a noise and had a gun, and the gun went off, where on the face of the complaint, you could at least see how that might be related to a home and an accident. But this is a stretch here to say that someone buys homeowner insurance thinking that involvement in a bar fight is going to be covered. We have to do a lot of stretching already to find that any kind of self-defense is covered here. Why should we extend it to this situation? The insurance company drafted the contract. It's a standard industry contract. We've all seen them before. Had they wanted to exclude things such as personal injury completely, they could have done so. But they didn't. They included in the policy that exclusion, saying if you're acting in self-defense and it doesn't say acting in self-defense within the property, you're covered off of the property. So therefore, they had the ability to exclude that completely had they intended to. They didn't do that. They left that ambiguity in the contract. Mr. Esposito had every right to rely upon that ambiguity once this accident took place. He didn't go to the bar intending to beat somebody up. He went to the bar to have a drink and listen to some music. And the fight was an accident. The fight was an accident. And the complaint said the fight was an accident. The complaint says that he struck him and kicked him. The complaint doesn't say the fight was an accident. The complaint says that he struck him and he kicked him. That's what the complaint says. As I think Judge Krause, when asking Mr. Gallagher, said, who's ever going to plead otherwise? Who's ever going to plead that I provoked a fight, but I got hurt, so I should be able to sue him? Puts you in a tough spot, right? It does, Your Honor. Your interest in criminal security, security from criminal prosecution, seems directly at odds in your interest in insurance coverage. Speaking of which. Although there was a criminal case filed, and I know you're going to get to it, and there was a plea offered, and Mr. Esposito accepted the plea because it was a probation. Why aren't you stopped by that? This isn't a no-contest plea, right? This is a guilty plea. I don't know whether it was a guilty plea or a nolo contendering. I honestly don't recall. If it's a guilty plea, why aren't you stopped anyway from raising this? I don't understand why this wasn't raised. Well, the better issue is, at that level, the court left open restitution for the defendant, for the alleged victim, which is Mr. Anderson, the underlying plaintiff, for 30 days to file for him to recover. He filed nothing. The same question is, why isn't he stopped now from coming forward? Because he didn't file when given an opportunity by that court to present restitution and damages for which the court could have awarded to him. But he didn't do that. He took no action whatsoever within his 30-day window. And, in fact, he took no action for many, many months until he filed the underlying action first in Philadelphia court, which was then kicked back to Delaware County because he was in the wrong court, and took many months to serve all the different individuals. So the same argument would have to apply to him. Under the policy, there's an exclusion for felonious conduct. Was the conduct charged here a felony? No, it was not. It was not a felony. It was a misdemeanor. It was simple assault as a misdemeanor for which he received community service, and I believe it was one year probation. Before we let you go, what's your response to the physical abuse exception point that your adversary added at the very end? I don't believe it was a physical abuse. I just don't see that argument at all, to be honest with you. I don't see anything that alleges a physical. It wasn't a physical abuse. It was a bar fight, as it's been referred to numerous times by the bench. It was a one-punch fight. In air products, we look to extrinsic material to consider an exception to the exclusion where we explicitly made the assumption that there was coverage, that there had been an occurrence. Can you point us to any authority from our court or in the Pennsylvania courts that says you can look to extrinsic evidence to determine the question whether there has been an occurrence at all? I believe that when they filed their motion for judgment on the pleadings, I filed my answer along with the affidavit from Mr. Esposito concerning the self-defense issue. It changed it to a summary judgment motion. It doesn't then become a judgment on the pleadings. It becomes a summary judgment motion. I believe it's Rule 17, if I'm not mistaken. The issue is Pennsylvania's four corners rule. Yes, I understood your question. Whatever stage of the process we're at, the question is, can you look beyond the four corners of the complaint? Is there any authority? Air products doesn't get you there. It says you can look beyond the four corners, look at other answers, anything else. I believe other jurisdictions. I do not believe I found one in Pennsylvania. I need to cover that up. It is what it is. Thank you. Rebuttal. Yes. Mr. Durham said you can never accidentally self-defend. That was offered a couple of times in different ways. It's a very significant concession in the case. Historically, the occurrence issue wasn't disputed by Mr. Esposito in the court below. It wasn't addressed in his appellate brief. And I understand the court can affirm they're savage on any basis apparent for the record. But it is important to note that point. Beyond that, if you have further questions, I'd be happy to try to answer them. Thank you very much. Thank you, Mr. Szilagyi. Thank counsel for the argument.